**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                           |
The Antitrend LLC,         |
                           |
      Plaintiff,           |
                           |
v.                         |        Case No. 1:20-cv-10987
                           |
Patagonia, Inc.            |
                           |
      Defendant.           |
_____|
```

## Complaint

1.   This case seeks to recover damages that Patagonia, Inc. ("PI") caused by knowingly misrepresenting material statements in complaints under the Digital Millennium Copyright Act ("DMCA"). For example, PI misrepresented that the Antitrend LLC ("Antitrend") infringed PI's copyrights by listing PI's products on the "A Reselling Company" Amazon storefront. PI's misstatements caused Amazon Services LLC ("Amazon") to shutter the A Reselling Company storefront for two weeks during the busy holiday season which caused substantial harm to Antitrend.

## Parties

2.   Antitrend is a Massachusetts Limited Liability Company located at 83 E Water St., Rockland, MA.

3.   Patagonia, Inc. ("Defendant" or "PI") is a California Corporation located at 235 W. Santa Clara St., Ventura, CA.

## Jurisdiction and Venue

4.   This Court has subject matter jurisdiction under 28 U.S. Code §§ 1331, 1332 & 1338.

5.   PI is subject to jurisdiction under the Massachusetts long-arm statute, M.G.L. c. 223A § 3.

6.   PI operates two stores in Massachusetts: Patagonia Boston and Patagonia Cambridge. It sells its goods through hundreds of distributors in Massachusetts. PI also regularly advertises, promotes, supplies, and sells its products to Massachusetts residents. PI derives substantial revenue from goods used or consumed here. On information and belief, PI has a leasehold interest in two properties in Massachusetts.

7.   This case arose due to PI transacting business in Massachusetts, including for example, knowingly making misrepresentations that were sent into and aimed at a business located in Massachusetts.

8.   PI's acts caused harm in Massachusetts.

9.   PI knew that its acts would cause harm in Massachusetts.

10.  Venue is proper in this District under 28 U.S.C. §§ 1391 & 1400.

11.  PI may be found doing business in Massachusetts and in this District.

## Facts

12.   The Antitrend operates "A Reselling Company" – a storefront on www.amazon.com.

13.   Through this storefront, it lists thousands of branded goods that were purchased on the open market without condition.

14.   Feedback for the Reselling Company is 99% positive. It earned this positive rating with authentic products that are subject to thorough inspection and adopting quality control processes to maintain its diverse inventory.

## Amazon's Policies to List Items on an Amazon Storefronts

15.   Antitrend must follow Amazon's policies when it lists a product on the A Reselling Company storefront. For example, Amazon's terms require that users match a product to an existing product detail page if such page for the products exists:

> **Match to an existing product listing**: If you have a product you want to sell which already exists on Amazon, you must match to the existing product detail page.

16.   A new product detail page may only be created if the product is not contained in Amazon's product catalog:

> **Create a new product listing**: If the product you want to sell does not exist on Amazon, you can list a new product and Amazon will create a new product detail page.

17.   According to Amazon's policies, "[d]etail pages are shared with other sellers who can offer the same."

18.   Amazon assigns each product in its catalog an "Amazon Standard Identification Number ("ASIN").

19.   Once an ASIN is assigned to a product, Amazon sellers must use that ASIN to list the product.

20.   An Amazon seller is only permitted to create a new ASIN for a product if the product has no ASIN.

**The A Reselling Company Lists PI Products as Authorized by Law**

21.   The law authorizes Antitrend to list PI products on the A Reselling Company storefront on www.amazon.com after purchasing them on the open market without condition.

22.   PI is unauthorized to restrict the rights of third-parties, including Antitrend's economic rights to freely participate in an open economy. Because it is unauthorized to curtail Antitrend's economic rights, PI has sought to restrict them by making false claims of copyright infringement.

23.   Specifically, PI submitted multiple complaints under the DMCA to Amazon where it knowingly made material misstatements to accuse Plaintiff of infringing PI's copyrights.

24.   On or about September 21, 2019, PI submitted a DMCA complaint against Antitrend (Complaint ID: 6456607971) where it knowingly made material misstatements, *e.g.*, falsely stating that the A Reselling Company storefront infringed PI's copyrights by listing 41 items.

25.   The A Reselling Company had not posted a listing for 22 of the 41 ASINs that PI identified in its DMCA complaint (ASIN Nos. B07XSM279F, B01MYFHXRG, B07DQVS4GG, B07G7GWJHH, B073XYCWRP, B06Y1RRQYB, B00P0148WU, B00L1I1WSE, B07R548X1G, B07TVF8QPY, B07B48CJ38, B01B44L9T6, B01LY8GADU, B07R751G15, B07SQMKJGF, B06WRRN13G, B07FYPKJMM, B01N9YUR97, B07961K9S1,B073WHNTQ6, B07TVZXGYT, and B07FYDZ4KD).

26.   PI knew, should have known, or recklessly disregarded the fact that the A Reselling Company had no listings for items with these 22 ASINs. PI knew, should have known, or recklessly disregarded the fact that content in a listing cannot infringe a copyright if the listing does not exist.

27.   PI also identified a product with ASIN No. B07XS94NZ2. This ASIN does not exist on www.amazon.com. PI knew, should have known, or recklessly disregarded the fact an imaginary content cannot infringe a copyright.

28.   For the remaining listings, Antitrend did not create nor post any content in any of the detail pages that PI alleged infringed its copyrights. PI knew, should have known, or recklessly disregarded that Antitrend did not create or post the accused content. PI also knew, should have known, or recklessly disregarded the fact that Antitrend cannot infringe a copyright if it did not copy any content.

29.   On information and belief, PI granted to Amazon the right to sublicense the accused content to Plaintiff when PI permitted the posting of said content on Amazon.

30.   Antitrend's listings did not give rise to copyright infringement because Amazon had been granted "a nonexclusive, royalty-free, perpetual, irrevocable, and fully sublicensable right to use, reproduce, modify, adapt, publish, perform, translate, create derivative works from, distribute, and display such content throughout the world in any media."

31.   PI also knew, should have known, or reckless disregarded the facts that the content that was allegedly copied lacked copyrightable expression and that Plaintiff has a right to list items on www.amazon.com for resale that were purchased on the open market without condition.

32.   PI filed another DMCA complaint on September 23, 2019 (Complaint ID: 6461164731) where it falsely stated that listings of items with ASINs B07D17DRVY (grey sweater jacket), B07962T4H9 (grey sweater jacket), B07D18MPTP (grey sweater jacket), and B00OZH6RHE (black sweater jacket) infringed its copyrights.

33.   PI knew that these listings for sweater jackets – whether black or gray – did not infringe its purported copyrights. PI does not own a copyright on grey sweater jackets nor on black sweater jackets because these plain-colored sweater jackets do not contain copyrightable subject matter.

34. PI also knew that Antitrend has a right to list items on amazon.com that were purchased on the open market without condition.

35. PI alleged in its DMCA complaint that the A Reselling Company infringed its copyright due to infringing content in the details page. It knew that such assertion was false. PI knew that the A Reselling Company did not upload any images nor create any content in the product details page. The detailed page for one item was created on December 10, 2015 which was years before the A Reselling Company storefront existed.

36. PI also licensed the use of the content in the listing because, on or around December 10, 2015, PI, its affiliates, and/or its distributors posted the content on www.amazon.com and thus granted to Amazon "a nonexclusive, royalty-free, perpetual, irrevocable, and fully sublicensable right to use, reproduce, modify, adapt, publish, perform, translate, create derivative works from, distribute, and display such content throughout the world in any media."

37. In a three-day period, Patagonia submitted multiple DMCA complaints to Amazon alleging that the A Reselling Company storefront had listed 45 items that infringed PI's copyrights. None did. Although it alleged 45 different allegedly infringing products, PI did not or was unable to identify any copyrights.

38.   PI knew that its DMCA complaints contained material misstatements. PI knew that none of the 45 identified listings infringed its purported copyrights.

39.   PI continued to submit DMCA complaints targeting the same ASINs. For example, on September 25, 2019, PI submitted a second DMCA complaint against a listing with ASIN B07FXZ6BPR (Complaint ID: 6463892561). The same day, it submitted another DMCA complaint for ASIN B07PBRL7BP (Complaint ID: 6464049141).

**PI's Multiple False DMCA Complaints Cause Amazon to Shut Down the A Reselling Company Storefront**

40.   A storefront's competitors, including brand owners, will often submit false complaints to Amazon against the storefront with the goal of shutting it down.

41.   False complaints against a storefront are submitted in a manner to increase the chances that it will be shut down. For example, competitors will submit multiple false complaints within a short time period that each allege infringement against numerous listings, often with duplicative allegations.

42.   This strategy not only makes an investigation more cumbersome, but it also makes it appear that infringement is rampant while an investigation is still pending.

43.   PI knew that multiple DMCA complaints in a short period that alleged numerous listings would likely cause Amazon to shut down a storefront.

44.   PI made false material misstatements in its DMCA complaints intending to close the A Reselling Company storefront. PI's false DMCA complaints caused Amazon to shut down the A Reselling Company storefront.

45.   For example, between September 21, 2019 and September 25, 2019, PI submitted four DMCA complaints stating that 45 different items listed by the A Reselling Company infringed PI's purported copyrights. None of them did. PI knew that its statements in the DMCA complaint were material and false.

46.   On October 29, 2019, Amazon reinstated all 45 ASINs because if found that PI's complaints were meritless. But PI made duplicative complaints on these items.

47.   On two occasions within five days, PI submitted complaints against listing with ASIN B07PBRL7BP.

48.   PI also submitted two complaints within five days against a listing for an item with ASIN B07FXZ6BPR.

49.   Due to the confusing and duplicative nature in which they were submitted, PI's false complaints caused Amazon to shut down the A Reselling Company storefront from November 11, 2019 to November 27, 2019.

50.   Even though Amazon had found that PI's allegations for each of the 45 accused items had no merit, PI submitted duplicative submissions of fake complaints against the A Reselling Company storefront to cause this suspension.

51.   PI's fake DMCA complaints caused Amazon to suspend the
A Reselling Company storefront. Amazon did so after it had
reinstated listings with these ASINs because PI's complaints
lacked merit. Due to PI's multiplicative and duplicative
submissions of false DMCA complaints, these ASINs had to be
cleared a second time.

52.   While the A Reselling Company storefront was shut
down, Antitrend requested that PI retract its baseless DMCA
complaints. PI refused to do so.

53.   Amazon, on November 27, 2019, again found that PI's
DMCA complaints had no merit when it released the wrongly-
accused products and allowed them to be listed.

54.   PI knew that its four complaints within five days
stating that a total of 45 items posted by A Reselling Company
infringed its purported copyrights were false when it submitted
them. PI intentionally submitted these false DMCA complaints and
the false statements therein with knowledge that they were false
or with a reckless disregard for the truth.

55.   PI submitted these DMCA complaints knowing that they
contained material false statements intending to shut down the A
Reselling Company storefront. PI also submitted duplicative
complaints knowing that they were false to cause Plaintiff's
storefront to be shuttered.

56.   The Antitrend has suffered harm due to PI's acts.

## Count I – Violation of 27 U.S.C. § 512(f)

57.  Paragraphs 1-56 are incorporated herein by reference

58.  PI knowingly submitted multiple complaints to Amazon under the DMCA that materially misrepresented that Antitrend posted listings on Amazon with material that infringed PI's copyrights.

59.  The Antitrend did not create any content in the listings that PI alleged to contain infringing content. For instance, PI alleged Antitrend infringed content posted as early as 2015—over a year before Antitrend existed. PI or its authorized agent also had granted to Amazon a license to use and sublicense the alleged infringing content.

60.  PI knew that Antitrend did not infringe its copyrights when it submitted its multiple false complaints to Amazon.

61.  In each of its DMCA complaints, PI's misstatements that Antitrend infringed its purported copyrights by posting listings was material.

62.  PI refused to retract its false complaints.

63.  PI's false complaints caused Amazon to deactivate the A Reselling Company storefront from November 11, 2019 to November 27, 2019.

64.  PI's false complaints caused Antitrend substantial harm, including for example, lost sales during the time in which the A Reselling Company storefront was deactivated.

## Count II – Defamation

65.   Paragraphs 1-64 are incorporated herein by reference.

66.   PI published false statements regarding the Antitrend.

67.   PI submitted four false complaints against the A Reselling Company storefront operated by the Antitrend alleging copyright infringement. PI falsely stated that the Antitrend posted 45 listings on its A Reselling Company Amazon storefront that infringed its copyrights. These items did not infringe any purported copyright. Some did not even exist. PI knew or should have known that these statements were false, or acted with a reckless disregard for the truth when it made these statements.

68.   PI intended these statements to damage Antitrend's reputation in the community, including the business community, the Amazon community, and elsewhere. PI made these statements intending to shut down the A Reselling Company storefront.

69.   These statements caused the Antitrend economic loss.

70.   For example, Amazon deactivated the A Reselling Company storefront for over two weeks because of Defendant's false statements which resulted in lost sales.

71.   The Antitrend also had to retain legal counsel to defend against Defendant's false and defamatory statements.

72.   Defendant intentionally and unreasonably failed to retract the false complaints when the falsity of their statements were made known.

## Count III – Injurious Falsehood

73.   Paragraphs 1-72 are incorporated herein by reference.

74.   PI published false statements regarding the Antitrend.

75.   Defendant knew or should have known that the statements were false or acted in reckless disregard of their truth or falsity.

76.   These statements were harmful to the Antitrend's interests of a pecuniary value.

77.   Defendant intended to publish the statement to harm the Antitrend's interests or recognized or should have recognized that they were likely to do so.

78.   The Antitrend suffered pecuniary loss resulting from PI's false statements.

## Count IV – Intentional Interference with Prospective Contractual Relations

79.   Paragraphs 1-78 are incorporated herein by reference.

80.   Defendant knew of the Antitrend's potential contracts with consumers seeking to purchase items listed on the A Reselling Company storefront.

81.   Defendant intentionally and improperly interfered with Antitrend's prospective contracts with these consumers. For example, Defendant caused Amazon to shut down the A Reselling Company storefront from November 11, 2018 to November 27, 2019.

82.  Defendant had improper motives and used improper means to interfere with these prospective contractual relations.

83.  Defendant's interference caused the Antitrend damage.

84.  Defendant's interference prevented the Antitrend from taking advantage of these prospective contractual relations.

### Count V – Intentional Interference with the Antitrend's Advantageous Business Relations with Amazon

85.  Paragraphs 1-84 are incorporated herein by reference.

86.  The Antitrend had a business relationship for economic benefit with Amazon. The Defendant knew of this relationship.

87.  The Defendant interfered with the relationship through improper motive or means, by for example, submitting false complaints against the A Reselling Company storefront intending for Amazon to shut down this storefront. Due to Defendant's false complaints, Amazon shut down the A Reselling Company storefront from November 11, 2018 to November 27, 2019.

88.  The Defendant's conduct caused the Antitrend harm.

### Count VI – Violation of M.G.L. c. 93A, §§ 2, 11

89.  Paragraphs 1-88 are incorporated herein by reference.

90.  Defendant's acts are unlawful under M.G.L. c. 93A §§ 2, 11, which declares unfair methods of competition and unfair or deceptive acts or practices in trade or commerce unlawful.

91.  PI engages in trade and commerce in Massachusetts and its conduct giving rise to this action occurred here.

92.   PI violated G.L. c. 93A, § 2 by submitting false complaints to Amazon regarding the Antitrend's posting of items through the A Reselling Company Amazon storefront.

93.   PI made these false complaints intending to shut down the A Reselling Company Amazon storefront. PI's efforts were designed to thwart competition. PI's unfair methods also include, on information and belief, placing unlawful restraints on the downstream resale of its products, misusing its trademarks, and eliminating competition on Amazon by making false complaints and defamatory statements.

94.   PI's violations of G.L. c. 93A, § 2 have caused Plaintiff harm, including for example, costs to defend itself against false complaints, lost sales, and lost customers.

## Relief Requested

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant and grant the following relief:

(a)   An award of compensatory to Plaintiff;

(b)   An award of multiple damages to Plaintiff;

(c)   An award of attorney fees and costs as well as pre-judgment interest and post-judgment interest; and,

(d)   For such other and further relief as the court deems the Plaintiff to be entitled, according to justice and equity.

## Jury Demand

Plaintiff requests trial by jury on all claims so triable.

-16-

Dated: May 21, 2020                          Respectfully Submitted,

                                             **Attorney for Antitrend,**

                                             */s/ Brian K. Wells*
                                             Brian Wells
                                             B.B.O. No. 670,462
                                             Wells P.C.
                                             112 Water St., Ste. 201
                                             Boston, MA 02109
                                             Telephone: 617-842-6161
                                             brian@wells.legal